HERCULES TROUSER CO. *v.* BURROW.

5-2632                                                   355 S. W. 2d 278

Opinion delivered March 26, 1962.

*Thomas E. Sparks,* for appellant.

*Lawson E. Glover,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Dallas County Industrial Development Corporation, entered into a lease agreement with appellants Hercules Trouser Co., Inc., hereinafter called Hercules, and Fordyce Apparel Company, Inc., for the construction of a large industrial building in Fordyce. The first named appellant was to finance construction of the building to the extent of $200,000, and the other two appellants were to furnish the balance of the funds necessary to complete construction, and thereafter, would pay a certain monthly rental to the Dallas County Industrial Development Corporation, such rentals to apply against the purchase price if an option to purchase was exercised.

According to plans and specifications, the first step was preparation of the site and foundation work, and this was referred to as "Contract A". The W. C. Burrow Company of Malvern was the successful bidder on contract "A", and proceeded with the work, completing it to the full satisfaction of appellants. Shortly prior to the completion of this contract, the architects for

874

Hercules advertised for bids to complete the construction of the building, said work being referred to in the plans and specifications as "Contract B". In addition to this general contract, other contractors bid on specific phases of the construction, such as electrical, plumbing, etc. Contracts were to be made with appellant Hercules Trouser Company, Inc., since the Dallas County Industrial Development Company was obligated only to furnish $200,000 (a part of which had been used to pay for the work done under contract "A", and it was apparent the cost of the building would far exceed the amount still retained by this corporation). Jess Resler of Columbus, Ohio, president of Hercules, testified that on the night of March 13th, the night before the bids were opened for contract "B", he received a telephone call from M. W. Calhoun, construction superintendent of appellee company. Resler stated that he thought he was dealing with the principal, because he had never met Burrow, or his partner, W. H. Glover of Malvern. The witness testified that he considered Calhoun had the right to act for the company, and accordingly did not hesitate to negotiate with him. According to Resler, Calhoun told him that he felt the bidding next day would be very competitive, and that he (Calhoun) was not certain the W. C. Burrow Company would be the low bidder. Resler favored Burrow receiving the contract because of the excellent work the company had done under contract "A". The witness stated that Calhoun told him that his regular bid would be approximately $112,938, and the two agreed that an additional fee would be paid to Burrow of $10,000. According to Resler, "That sounded a little irregular to me, and we probably shouldn't have done it, but we did, and when the bids were opened by the Dallas County Industrial Development Corporation, they showed that if we took their bid of $112,938.00, we were actually paying $1,596.00 more to the W. C. Burrow Company than the bid of the Puterbaugh Construction Company."[1]

---

[1] Resler stated that the Burrow bid was actually more because of the $10,000 additional fee which he had agreed to pay.

Appellees contend that the agreement to construct the building was on a cost plus ten percent basis, it being understood, however, that appellees' profit would not exceed $10,000, irrespective of the cost of the building. On April 15, 1960, appellee W. H. Glover directed a letter to Mr. Resler, as follows:

"Dear Mr. Resler:

Confirming your telephone conversation of April 14 with our Mr. M. W. Calhoun. We understand that your architect has been away on vacation, thereby, delaying forwarding to us formal contract, both with you and the Fordyce Industrial Corporation.

We understand it is your desire that we proceed with all haste without a contract, but it is also understood that our base bid did not include any profit and that since all bids exceeded money available from the Fordyce Industrial Corporation, we understand you wish us to proceed on a cost plus ten-percent, but not to exceed $10,000.00. Our books, payrolls, invoices, etc., are to be made available to you to show our actual cost. We are to give you our monthly estimate of work performed, and are to be paid monthly.

We assure you that we will proceed immediately in a good workmanlike manner to save all money possible.

If this is your understanding please sign below and return copy for our files. We hope to meet you on your next trip to Arkansas.

sincerely yours,

W. C. BURROW COMPANY

BY /s/ W. H. Glover"

Mr. Resler admittedly signed the following notation on the letter:

"Accepted this 17 day of April, 1960.

HERCULES TROUSER COMPANY

By /s/ J. S. Resler, Pres.

J. S. Resler"

Various deletions and deductions were made from time to time, reducing the base bid by $31,115.06. though some extras were also subsequently added. In the end, appellees contended that they were due $11,685.28, for which suit was instituted, and appellants contended that appellees were due $2,947.56. The question was whether appellees were to receive the amount of the base bid (as subsequently reduced by deductions and items omitted) plus $10,000, as contended by appellants, or if the building was constructed on the basis of a cost plus ten per cent contract, the profit, however, not to exceed $10,000, as contended by appellees. Appellees asserted that $8,182.00 of the sum sought in the complaint constituted the profit. On trial, the court held with appellees, and awarded judgment for $11,685.28, together with costs, and interest at the rate of six per cent from April 18, 1961, until paid. The decree further provided that if the amount be not paid within sixty days, such sum should be declared a lien against the property. From the decree so entered, appellants have appealed. For reversal, it is contended, first, that all of appellants' evidence introduced was competent and admissible under exceptions to the parole evidence rule, but that the Chancellor did not consider all of the evidence so offered, and second, that the decree of the Chancellor was against the preponderance of the evidence.

We find nothing in the record that shows that the Chancellor did not consider all of the evidence, but we see no need to scrutinize this point, since we are clearly of the opinion that, in considering all testimony and exhibits, the preponderance still lies with appellees. A discussion of all of the evidence would serve no particular purpose, since this case is not one of first impression, and there are no unusual matters of law involved which would make this opinion noteworthy as a precedent for the future.

The letter from Glover to Resler of April 15th is certainly not ambiguous, and clearly sets forth that the Burrow Company is to proceed on a cost plus ten per

cent basis. The phrase "Our books, payrolls, invoices, etc., are to be made available to you to show our actual costs" is, of course, in complete conformity with a cost plus agreement. Mr. Resler stated that he read this letter before he signed it. When asked if he could explain the meaning of the sentence just quoted, Resler replied: "I thought somone was screwy, because it had nothing to do with prior arrangements." Subsequently, the witness stated, "I didn't know what the interpretation of that was." Resler insisted that he dealt entirely with Calhoun, thinking that the latter was a principal, in spite of the fact that both the bid bond and contract "A" had been signed by Glover, and appellees' stationery listed the company as composed of W. C. Burrow and W. H. Glover. At any rate, Resler signed the acceptance, though according to his own testimony, he noted the cost plus provision.

In addition, the record reflects a second letter from Glover to Benham, Richards & Armstrong, architects for appellants, dated April 23, 1960, pertinent portions reading as follows:

"We will appreciate you preparing contract with the proper officers of Hercules Trouser Company and our Company. We have gone to work on the job by reason of a letter from Mr. Resler, a copy of which is hereto attached.[2]

After accepting deductions and additions our fee would be $8,182.00. We are to make all our books, payrolls, and invoices available to show actual cost. If the job can be built for less than $81,822.94, the savings is for the Hercules Trouser Company and if it goes over that amount it is for their account."

Mr. Armstrong denied receiving a copy of the letter to Resler.

An additional pertinent fact supports appellees' position. Builder's risk insurance had been purchased from Rebsamen & East of Little Rock, and paid for by ap-

---

[2] This reference was to the letter written by Glover to Resler on April 15th, and accepted by the latter.

pellees. This was included in the costs. Resler canceled this insurance on October 4, 1960, and requested a refund. This check for refund in the amount of $246.99 was made payable to Hercules Trouser Company, and cashed by Resler. Of course, if this were not a cost plus contract, Resler was not entitled to the unearned premium.

We are firmly of the opinion that the decree is supported by a preponderance of the evidence.

Affirmed.